IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| GERONIMO F. ROSADO, JR., : | |
|     *Plaintiff*, : | |
| : | |
| v. : | CIVIL ACTION NO. 24-CV-2972 |
| : | |
| CHESTER COUNTY HOSPITAL, *et al.*, : | |
|     *Defendants*. : | |

**MEMORANDUM**

**Pappert, J.**                                                                                                  **November 6, 2024**

      Geronimo F. Rosado, Jr. initiated this civil action by filing a *pro se* Complaint raising various claims following an emergency room visit to Chester County Hospital in August 2023, which culminated in an altercation between Rosado and a hospital security guard. Rosado seeks leave to proceed *in forma pauperis*. For the following reasons, the Court will grant Rosado leave to proceed *in forma pauperis* and dismiss the Complaint in its entirety. Rosado's federal claims will be dismissed with prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim, and his state law claims will be dismissed without prejudice for lack of subject matter jurisdiction.

I

      Rosado names several defendants including Chester County Hospital, and its employees, Mike Duncan (identified in the Complaint as the President and CEO of Chester County Hospital), Darren Girardeau (identified as the Senior Director of Nursing), Angela Coladonato (identified as the Senior Vice President/Chief Nursing Officer), Shane Flickinger (identified as the Vice President of Operations), Rich Censullo (identified as the Director of Public Safety), Robert K. Davis (identified as a

security guard), Jane Doe #1 (identified as an ER nurse), John Doe #2 (identified as an ER nurse), and John Doe #3 (identified as a security guard).  (*See* ECF No. 1 ("Compl.") at 1-3.)[1]  All defendants are sued in their official and individual capacities.  (*Id.* at 1.)

Rosado[2] avers that on August 11, 2023, he checked into the ER at Chester County Hospital to obtain treatment for a pulpitis bacterial inflammation of his tooth.  (*Id.* at 4.)  He was accompanied by his fiancé, four-year-old daughter, and three-week-old baby.  (*Id.*)  Rosado alleges that he was in extreme pain and that while he was waiting in the lobby of the ER, "the cold air conditioning circulated inside [his] mouth" increasing his pain level.  (*Id.*)  At some point while awaiting treatment, Rosado exited the ER "screaming" in extreme pain "with a towel compressed to his mouth" and "blowing warm air."  (*Id.* at 4-5.)  Jane Doe #1 allegedly followed Rosado outside, telling him that he could not "wait outside, otherwise. Treatment will be denied."  (*Id.* at 5.)  Despite this admonition, Rosado stayed outside.  (*Id.*)

Doe #1 returned outside, again telling Rosado that in order to be treated, he must enter that ER and that "his family must wait downstairs, due to Covid restrictions."  (*Id.*)  Rosado told Doe #1 that he had "a Court custody **ORDER** that fiancé must be, supervised with kids, due to mentally impaired" and that he must supervise his children.  (*Id.*) (bolded emphasis in original).   When Rosado decided to re-enter the ER, he saw Doe #1 holding and rocking his baby.  (*Id.*)  Rosado approached Doe #1, requesting that the baby be returned "into his custody," but she allegedly

---

[1] The Court adopts the pagination assigned to the Complaint by the CM/ECF system.

[2] Rosado alleges that he is "A disabled (**SSDI**). Participant, visually impaired. underwent surgery, Corneal Graft, right eye, Natural 14th Amendment Citizen."  (Compl. at 2.) (bolded emphasis and punctuation in original).

refused. (*Id.* at 6.) Rosado requested that his baby be returned several more times before stating, "<u>please give me my baby, I don't know why you have my baby; you just inform me their Covid [sic] and my family Cannot enter with me, your clothes have germs, and Covid, please give me my child.</u>" (*Id.*) (underline emphasis in original). As Rosado moved forward to "take possession of" his baby, Doe #1 "Intentionally and maliciously move[d] away, causing a scene for the hospital security intervention" and "interfere[ed] with a Court parental. rights **ORDER** without due process of law, probable cause., and or legal justification." (*Id.*) (punctuation and bolded emphasis in original). Rosado then began recording Doe #1, and "several medical personnel and security personnel started intervening" and "circling" him, "appearing to unlawfully restrain [him] without legal justification." (*Id.* at 7.)

As Rosado continued to record, John Doe #2 walked towards him, telling Rosado "<u>[m]ake sure you put on camera, you yanking a baby around.</u>" (*Id.*) (underlined emphasis in original). Rosado told his fiancé that they should leave, but she disagreed, telling Rosado to stay so that he could obtain treatment. (*Id.*) However, Rosado walked toward the exit doors, and as he approached the doors, he was "unlawfully provoked and pushed" from behind by Davis, a hospital security guard. (*Id.* at 8.) Rosado further avers that John Doe #3 "[p]articipated[ed] in the misconduct directly or indirectly" by using "verbal and physical hand gestures." (*Id.*) After leaving the ER, Davis allegedly threatened Rosado by shouting, "<u>What's up? We are Outside the building now!</u> (*Id.*) (underlined emphasis in original). Rosado contends that Davis then physically assaulted him, causing his cell phone to fly out of his hand and "smash[] on the

3

Hospital concrete" rendering the cell phone inoperable. (*Id.*) Rosado alleges that John Doe #3 failed to intervene in the assault. (*Id.* at 9.)

The police were called, and Doe #1 told the police that she believed that Rosado was under the influence of an unknown substance, and that she had reason to believe that Rosado's family was in danger of abuse. (*Id.* at 10.) Rosado claims Doe #1 was "spread[ing] propaganda" and because he allegedly "no longer [felt] safe," Rosado told his fiancé that they'd be leaving to go to another hospital. (*Id.*)

On August 15, 2023, Rosado filed a complaint against Davis. (*Id.*) Davis was eventually criminally charged with harassment and entered a plea on December 13, 2023. (*Id.* at 11.) Davis was required to undergo anger management classes and write an apology letter to Rosado. (*Id.*) Chester County Hospital paid for the damage to Rosado's cell phone. (*Id.*)

Based on the foregoing allegations, Rosado contends that Chester County Hospital, Mike Duncan, Jane Doe #1, John Doe #2, John Doe #3, and Robert Davis "interfered with [his] treatment . . . causing a **2-Hour**. Denial and delay while interfering to receive appropriate. care and medical intervention" resulting in cruel and unusual punishment in violation of the Eighth Amendment. (*Id.* at 10.) (bolded emphasis in original). Rosado further avers that the defendants "[e]xhibited deliberate indifference, intentional and gross negligence," subjected him and his family to false imprisonment, deprived him of adequate medical care, and caused "intentional infliction of emotional distress." (*Id.*)

Rosado asserts numerous claims for relief, including, *inter alia*, violations of the First, Fourth, Eighth, and Fourteenth Amendments, breach of informed consent, failure

4

to intervene, false imprisonment, discrimination, gross negligence, negligent hiring and supervision, premises liability, defamation, Medicare fraud, and violations of the Americans with Disabilities Act, 42 U.S.C. § 12101. (*Id.* at 1-2, 12-39.) He seeks compensatory and punitive damages in excess of $3.2 million and the termination of defendants Jane Doe #1, John Does #2 and #3, and Robert Davis.[3] (*Id.* at 42.)

II

The Court will grant Rosado leave to proceed *in forma pauperis* because it appears that he is incapable of paying the fees to commence this civil action. Accordingly, 28 U.S.C. § 1915(e)(2)(B) requires the Court to dismiss the complaint if, among other things, it fails to state a claim. Whether a complaint fails to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), *see Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999), which requires the Court to determine whether the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted). "At this early stage of the litigation,' '[the Court will] accept the facts alleged in [the *pro se*] complaint as true,' 'draw[] all reasonable inferences in [the plaintiff's] favor,' and 'ask only whether [that] complaint, liberally construed, . . . contains facts sufficient to state a plausible [] claim.'" *Shorter v. United States*, 12 F.4th 366, 374 (3d

---

[3] The Court has no authority to order that a defendant be terminated from their employment in a § 1983 civil rights case. *See Hall v. Carny*, No. 22-4094, 2023 WL 187569, at *1 (E.D. Pa. Jan. 13, 2023) (dismissing with prejudice the request that defendant be terminated from his employment); *Buskirk v. Pennsylvania Bd. of Prob. & Parole*, No. 22-1826, 2022 WL 4542094, at *1-2 n.4 (E.D. Pa. Sept. 28, 2022) (construing plaintiff's request for the court to terminate the defendants' employment as seeking injunctive relief and holding that the court has no authority to terminate the employment of a state employee).

Cir. 2021), *abrogation on other grounds recognized by Fisher v. Hollingsworth*, 115 F.4th 197 (3d Cir. 2024) (quoting *Perez v. Fenoglio*, 792 F.3d 768, 774, 782 (7th Cir. 2015)).  Conclusory allegations do not suffice.  *Iqbal*, 556 U.S. at 678.

Also, when allowing a plaintiff to proceed *in forma pauperis*, the Court must review the pleadings and dismiss the matter if it determines, *inter alia*, that the action fails to set forth a proper basis for this Court's subject matter jurisdiction.  Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."); *Group Against Smog and Pollution, Inc. v. Shenango, Inc.*, 810 F.3d 116, 122 n.6 (3d Cir. 2016) (explaining that "an objection to subject matter jurisdiction may be raised at any time [and] a court may raise jurisdictional issues *sua sponte*").  A plaintiff commencing an action in federal court bears the burden of establishing federal jurisdiction.  *See Lincoln Ben. Life Co. v. AEI Life, LLC*, 800 F.3d 99, 105 (3d Cir. 2015) ("The burden of establishing federal jurisdiction rests with the party asserting its existence." (citing *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 342 n.3 (2006))).  Because Rosado is proceeding *pro se*, the Court construes his allegations liberally.  *Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021) (citing *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244-45 (3d Cir. 2013)).

### III

#### A

##### 1

Rosado asserts several claims for constitutional violations pursuant to 42 U.S.C. § 1983.  (*See* Compl. at 1.)  "Section 1983 is not a source of substantive rights," but is merely a means through which "to vindicate violations of federal law committed by

state actors." *See Gonzaga Univ. v. Doe*, 536 U.S. 273, 284-85 (2002). "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). "The color of state law element is a threshold issue; there is no liability under § 1983 for those not acting under color of law." *Groman v. Twp. of Manalapan*, 47 F .3d 628, 638 (3d Cir. 1995). Additionally, in a § 1983 action, the personal involvement of each defendant in the alleged constitutional violation is a required element, and, therefore, a plaintiff must allege how each defendant was involved in the events and occurrences giving rise to the claims. *See Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1998); *see also Iqbal*, 556 U.S. at 676 ("Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution.").

Rosado sues Mike Duncan, Darren Girardeau, Angela Coladonato, Shane Flickinger, and Rich Censullo but alleges no facts against them in the complaint. In other words, Rosado has not alleged what each of these defendants did, or did not do, to violate his constitutional rights. Accordingly, to the extent Rosado seeks to present claims against Duncan, Girardeau, Coladonato, Flickinger, and Censullo, Rosado has not alleged sufficient facts to proceed against them.

Regardless, Rosado's constitutional claims fail because none of the defendants are alleged to be state actors. Whether a private entity is acting under color of state law – *i.e.*, whether the defendant is a state actor subject to liability under § 1983 – depends on whether there is "such a close nexus between the State and the challenged

7

action' that seemingly private behavior may be fairly treated as that of the State itself." *Leshko v. Servis*, 423 F.3d 337, 339 (3d Cir. 2005) (internal quotations omitted). "To answer that question, [the United States Court of Appeals for the Third Circuit has] outlined three broad tests generated by Supreme Court jurisprudence to determine whether state action exists: (1) whether the private entity has exercised powers that are traditionally the exclusive prerogative of the state; (2) whether the private party has acted with the help of or in concert with state officials; and (3) whether the state has so far insinuated itself into a position of interdependence with the acting party that it must be recognized as a joint participant in the challenged activity." *Kach v. Hose*, 589 F.3d 626, 646 (3d Cir. 2009) (internal quotations and alteration omitted).

Rosado has not alleged facts to support a plausible conclusion that any of the named defendants meet any of the foregoing tests, and nothing in the complaint suggests any factual or legal basis for concluding the defendants are state actors who could be held liable under § 1983. *See, e.g., Howard v. Einstein Hosp.,* No. 20-1101, 2020 WL 4584035, at *4 (E.D. Pa. Aug. 10, 2020) (section 1983 "claim against Einstein Medical Center would not be plausible because private hospitals and their employees are generally not 'state actors' subject to liability under § 1983") (citing *Carver v. Plyer*, 115 F. App'x 532, 537 (3d Cir. 2004)); *Bess v. Albert Einstein Hosp.,* No. 21-4059, 2022 WL 685537, at *3 (E.D. Pa. March 8, 2022) (concluding that Albert Einstein Hospital and its employees were not state actors for purposes of § 1983); *Chrupcala v. Chester Cnty. Hosp.*, No. 00-6027, 2003 WL 21088476, at *5 (E.D. Pa. Jan. 29, 2003) (concluding that defendants Chester County Hospital and its privately employed nurse were not state actors, and, therefore, could not face liability under 42

U.S.C. § 1983). Accordingly, Rosado has not stated a plausible constitutional claim against any named defendant – all of whom are alleged to be employees of Chester County Hospital – and any § 1983 claims will be dismissed with prejudice pursuant to § 1915(e)(2)(B)(ii) for failure to state a claim upon which relief can be granted.

2

Rosado asserts claims under the ADA but does not state which section of the statute supports his claims. (Compl. at 37-39.) The Court understands Rosado to be asserting a claim under Title III of the ADA, 42 U.S.C. § 12181, prohibiting discrimination against the disabled, *inter alia*, by a "professional office of a health care provider, hospital, or other service establishment." *See* 42 U.S.C. § 12181(7)(F); *Hollinger v. Reading Health Sys.*, No. 15-5249, 2017 WL 429804, at *4, *8 (E.D. Pa. Jan. 31, 2017) (hospital qualifies as place of public accommodation).[4]

To state a claim of disability discrimination under Title III of the ADA, a plaintiff must show (1) he or she was discriminated against on the basis of a disability;[5] (2) in the full and equal enjoyment of the goods, services, facilities, privileges, advantages or accommodations of any place of public accommodation; (3) by the public

---

[4] There are four subparts to the ADA. Title I prohibits discrimination in employment, which is not implicated here. Title II "bars disability discrimination in the services, programs, or activities of a 'public entity,' defined as a state or local government, its agencies or instrumentalities, and the National Railroad Passenger Corporation or any commuter authority." *Datto v. Harrison*, 664 F. Supp. 2d 472, 486 (E.D. Pa. 2009). The allegations in the Complaint suggest that Title II is also not applicable. Title IV is a catch-all provision that prohibits, *inter alia*, retaliation, coercion and intimidation. *Id*. at 486-87 (citations omitted). Rosado's ADA claims do not involve employment, there is no assertion that any Defendant is a public entity, and Rosado does not allege retaliation, coercion, or intimidation.

[5] "Disability" is defined as "a physical or mental impairment that substantially limits one or more major life activities of such individual. . . ." 42 U.S.C. § 12102(1)(A).

accommodation's owner, lessor or operator. *Anderson v. Franklin Inst.*, 185 F. Supp. 3d 628, 642 (E.D. Pa. 2016) (quoting *Harty v. Burlington Coat Factory of Pennsylvania, L.L.C.*, No. 11-01923, 2011 WL 2415169, at *9 (E.D. Pa. June 16, 2011) (internal citations omitted); *Dempsey v. Pistol Pete's Beef N Beer, LLC*, No. 08-5454, 2009 WL 3584597, at *3 (D.N.J. Oct. 26, 2009).

Rosado alleges that he is "A disabled (**SSDI**). Participant" who is visually and hearing impaired. (Compl. at 2, 38.) (bolded emphasis in original). He does not allege whether or how these impairments substantially limit one or more major life activities, nor does he allege that any of the named defendants knew of these impairments and discriminated against him because of them. In his complaint, Rosado improperly alleges in conclusory fashion only that the defendants "failed to accommodate," "refused to provide treatment," and "physically prevented [him] from receiving care" (*id.* at 38) in violation of the ADA. *Iqbal*, 556 U.S. at 678. Nothing in Rosado's complaint provides a basis for concluding that any of the defendants discriminated against him on account of a disability or restricted his ability to participate in the full and equal enjoyment of public accommodations. To the contrary, it appears from the allegations that Rosado made his own decision to leave the ER waiting room rather than wait his turn to be seen. (Compl. at 4-5, 7.) Accordingly, Rosado has not presented any plausible basis for a claim pursuant to Title III of the ADA.[6]

---

[6] Even if Rosado had alleged facts which could support such a claim, he likely would not have been able to establish standing to seek injunctive relief under Title III of the ADA. "To satisfy the 'case or controversy' standing requirement under Article III, § 2 of the United States Constitution, a plaintiff must establish that it has suffered a cognizable injury that is causally related to the alleged conduct of the defendant and is redressable by judicial action." *Pennsylvania Psychiatric Soc. v. Green Spring Health Servs., Inc.*, 280 F.3d 278, 283 (3d Cir. 2002) (citing *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180-81 (2000)); *Doe v. Nat'l Bd. of Med. Examiners*, 199 F.3d 146, 152

Rosado will not be granted leave to amend his claims to cure the deficiencies described above because to do so would be futile. Rosado's ADA claims are not plausible for the additional reason that the ADA does not provide a cause of action based on medical treatment decisions. *See Hollinger*, 2017 WL 429804, at *9-10 (concluding that "a hospital's denial of medical treatment for a person's disabilities is not the type of claim encompassed by the ADA") (citing *Rosario v. Washington Mem'l Hosp.*, No. 12-1799, 2013 WL 2158584, at *5 (W.D. Pa. May 17, 2013) (citing cases).

B

Rosado also seeks to assert various state law claims, including, *inter alia*, breach of informed consent, failure to intervene, false imprisonment, gross negligence, negligent hiring and supervision, premises liability, defamation, and intentional infliction of emotional distress. (*See* Compl. at 1-2, 12-39.) The only independent basis for jurisdiction over any such claims is 28 U.S.C. § 1332(a), which grants a district court jurisdiction over a case in which "the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States."[7]

---

(3d Cir. 1999). As only prospective injunctive relief is available in a private action under Title III of the ADA, *see Clark v. Burger King Corp.*, 255 F. Supp. 2d 334, 341 n.8 (D.N.J. 2003) (citing 42 U.S.C. § 12188)), a Title III plaintiff "must show that he or she is likely to suffer *future* injury from the defendant's illegal conduct." *Doe v. Nat'l Bd. of Med. Examiners*, 210 F. App'x 157, 159-60 (3d Cir. 2006) (citing *Roe v. Operation Rescue*, 919 F.2d 857, 864 (3d Cir. 1990)). In determining whether a plaintiff has standing under Title III, courts focus on "the likelihood of the plaintiff's return to the place of public accommodation." *Wittmann v. Island Hosp. Mgmt.*, Civ. No. 09-3698, 2011 WL 689613, at *5 (D.N.J. Feb. 18, 2011); *see also Camarillo v. Carrols Corp.*, 518 F.3d 153, 158 (2d Cir. 2008.) Rosado seeks monetary damages in this case, and there are no allegations in his complaint from which the Court might construe a claim for prospective injunctive relief. To the contrary, Rosado seeks to "Enjoin and Restrain Defendants . . . for the deprivation [he] underwent" while attempting to obtain treatment. (Compl. at 44.)

[7] Because the Court has dismissed Rosado's federal claims, it will not exercise supplemental jurisdiction over any state law claims.

11

Section 1332(a) requires "'complete diversity between all plaintiffs and all defendants,' even though only minimal diversity is constitutionally required. This means that, unless there is some other basis for jurisdiction, 'no plaintiff [may] be a citizen of the same state as any defendant.'" *Lincoln Ben. Life Co. v. AEI Life, LLC*, 800 F.3d 99, 104 (3d Cir. 2015) (quoting *Lincoln Prop. Co. v. Roche*, 546 U.S. 81, 89 (2005) and *Zambelli Fireworks Mfg. Co. v. Wood*, 592 F.3d 412, 419 (3d Cir. 2010) (internal footnotes omitted)). An individual is a citizen of the state where he is domiciled, meaning the state where he is physically present and intends to remain. *See Washington v. Hovensa LLC*, 652 F.3d 340, 344 (3d Cir. 2011). A corporation is a citizen of the state in which it was incorporated as well as where it has its principal place of business. *See* U.S.C. § 1332(c)(1). It is the plaintiff's burden to establish diversity of citizenship, *see Gibbs v. Buck*, 307 U.S. 66, 72 (1939); *Quaker State Dyeing & Finishing Co., Inc. v. ITT Terryphone Corp.*, 461 F.2d 1140, 1143 (3d Cir. 1972) (stating that, in diversity cases, the plaintiff must demonstrate complete diversity between the parties and that the amount in controversy requirement has been met); *Jackson v. Rosen*, No. 20-2842, 2020 WL 3498131, at *8 (E.D. Pa. June 26, 2020).

Rosado does not allege the citizenship of the parties. Rather, he provides only Pennsylvania addresses for himself and all named defendants, which suggests that the parties are not diverse. Because the allegations do not explicitly reveal the defendants' citizenship for purposes of plausibly establishing diversity of citizenship, Rosado has failed to meet his burden of demonstrating that this Court has subject matter jurisdiction over any state law tort claims he may be raising. *See Lincoln Ben. Life Co.*, 800 F.3d at 105 (citing *DaimlerChrysler Corp.*, 547 U.S. at 342 n.3); *Smith v. Albert*

*Einstein Med. Ctr.*, No. 08-5689, 2009 WL 1674715, *4 (E.D. Pa. June 11, 2009) ("Diversity jurisdiction requires complete diversity between the parties. . . . [N]o single Plaintiff may be a citizen of the same state as any single Defendant.") (citations omitted). Accordingly, any state law claims will be dismissed without prejudice for lack of subject matter jurisdiction.

IV

For the foregoing reasons, the Court will grant Rosado leave to proceed *in forma pauperis* and dismiss his complaint in its entirety. All federal law claims will be dismissed with prejudice and without leave to amend for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii). Rosado's state law claims will be dismissed without prejudice for lack of subject matter jurisdiction. Amendment would be futile because Rosado cannot cure the noted deficiencies in the complaint. However, the dismissal of the state law claims is without prejudice to Rosado refiling his state law claims in state court, where federal diversity jurisdiction will not be an issue.[8] An appropriate Order follows, which dismisses this case.

**BY THE COURT:**

***/s/ Gerald J. Pappert***
**Gerald J. Pappert, J.**

---

[8] The Court expresses no opinion on the merit of such claims.